**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

IN RE ASHLEY J. FLETCHER

Chapter 7

Case No. 12-11961 (ALG)

Debtor

------------------------------------------------------------------x

## DECISION AND ORDER DENYING MOTION TO REOPEN CASE

Ashley J. Fletcher (the "Debtor" or "Ashley") filed a voluntary petition under Chapter 7 on May 9, 2012. An order of discharge, dated August 21, 2012, was entered, and the case was closed on August 24, 2012. Kindy Properties ("Kindy"), an unsecured creditor, has now filed a motion, dated September 7, 2012, seeking to reopen the case to proceed with a challenge to Ashley's discharge and the dischargeability of a debt owed to it. For the reasons set forth hereafter, Kindy has failed to show cause for reopening the case, and its motion is denied.

*FACTS*

The movant, Kindy Properties ("Kindy"), apparently leased a condominium apartment to Ashley's mother, Marjorie Lynch-Fletcher ("Marjorie"), pursuant to a written lease agreement for a one-year term, from November 1, 2009 to October 31, 2010, with a monthly rent of $2,830. In addition, Marjorie entered into a separate "guest agreement." Ashley was not a signatory to the lease or the guest agreement but apparently lived in the apartment with her mother for some or all of the rental term.

Kindy alleges that the checks Marjorie presented to Kindy to pay the rent and security deposit were returned by her bank for insufficient funds. Thereafter, Kindy commenced a non-payment and eviction proceeding in New York City Civil Court against Marjorie, the tenant, and

Ashley, as occupant. An attorney filed a notice of appearance in the Civil Court action on behalf of both respondents. On March 11, 2010, a judgment of possession was granted in favor of Kindy, and a money judgment was entered against Marjorie and Ashley for $17,400. That judgment was amended on May 21, 2010 to include rent through April 30, 2010, increasing the money judgment to $20,250. On or about May 1, 2010, the premises were vacated, but the Civil Court lawsuit continued.[1] On August 5, 2010, the parties entered into a stipulation (the "August Stipulation"), which provided for the entry of a money judgment against Marjorie and Ashley in the amount of $36,000, and an agreed schedule of payments totaling $24,000 that, if made, would satisfy the judgment. The Civil Court, City of New York so ordered the August Stipulation. Although Ashley was not present in court and did not sign the stipulation, beneath Marjorie Fletcher's signature there is a handwritten notation, "For herself + Ashley Fletcher," and the judgment was entered against both Marjorie and Ashley. The August Stipulation was also signed by the attorney who had entered a notice of appearance for both Marjorie and Ashley in the Civil Court action.

On October 3, 2011, several months prior to Ashley's petition date and over one year after the August Stipulation was entered, her mother Marjorie filed a chapter 13 bankruptcy petition, which she voluntarily converted to chapter 7 on January 11, 2012. The last date to challenge Marjorie's discharge, or the dischargeability of certain of her debts, was May 4, 2012; on that date, Kindy filed an adversary proceeding against Marjorie, objecting to Marjorie's discharge and seeking to have the debt she owed to Kindy deemed nondischargeable. Five days later, on May 9, 2012, Kindy filed its first amendment to the complaint against Marjorie.

---

[1] The May 1, 2010 date is derived from Kindy's complaint against Marjorie.

As noted above, Ashley also filed her chapter 7 petition on May 9, 2012. Ashley's petition included Kindy as a Schedule F unsecured creditor, and notice of the proceeding was sent to Kindy. The deadline for filing an adversary proceeding to oppose Ashley's discharge or to challenge the dischargeability of certain of her debts was August 20, 2012. On August 20, 2012, instead of filing an adversary proceeding against Ashley in Ashley's case, Kindy filed a second amended complaint (the "Second Amended Complaint") in the adversary proceeding against Marjorie, and purported to add Ashley as a defendant. As there was no adversary proceeding linked to Ashley's bankruptcy case challenging her discharge or the dischargeability of any of her debts, an order of discharge was entered, as previously noted, and Ashley's case was closed. Kindy then appeared in Marjorie's case with Ashley as a purported defendant. This led to several conferences with the undersigned and Judge Lane, to whom Marjorie's case is assigned. On instructions from both judges, Kindy brought the current motion which seeks to reopen Ashley's bankruptcy case for the purpose of revoking her discharge and challenging the dischargeability of the debt owed to Kindy.

## DISCUSSION

Kindy was instructed by both judges that its motion to reopen Ashley's case had to show that there was merit to its claims against Ashley. Instead of a serious effort on Kindy's part to show that it has a *prima facie* or meritorious case against Ashley, its lawyer's papers are more in the nature of a rant against the alleged injustice of the bankruptcy discharge. Only the following possible claims can be gleaned from Kindy's papers. First, Kindy contends that the Second Amended Complaint filed in Marjorie's case should be deemed a timely-filed discharge and dischargeability action against Ashley. Second, Kindy's putative complaint would revoke Ashley's discharge under § 727 of the Bankruptcy Code or, alternatively, have Kindy's debt

3

under the August Stipulation declared nondischargeable pursuant to § 523(a)(2)(A). For the reasons stated hereafter, Kindy has failed to show that it has a meritorious *prima facie* case, and its motion to reopen Ashley's case is denied.

"Bankruptcy courts have broad discretion when deciding whether to reopen a closed case." *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) *appeal dismissed*, 11-CV-5360 RRM, 2012 WL 3307357 (E.D.N.Y. Aug. 12, 2012); *see also In re Farley,* 451 B.R. 235, 237 (Bankr.E.D.N.Y.2011); *In re Lowery*, 389 B.R. 512, 514 (Bankr. E.D.N.Y. 2008); *In re Stein*, 349 B.R. 13, 15, (Bankr. E.D.N.Y. 2008). Importantly, it is "appropriate for a bankruptcy court to consider the merits of the underlying claim when deciding whether or not to grant a motion to reopen the proceedings." *In re Kassover*, 448 B.R. 625, 631 (S.D.N.Y. 2011), citing *In re Smith*, 426 B.R. 435, 440 (E.D.N.Y.2010). Therefore, if the movant's underlying claim is without merit, "a bankruptcy court may properly deny the motion." *Id*. Moreover, while "the time period imposed by Rule 4007(c) is not jurisdictional and thus is subject to waiver, estoppel, and equitable tolling," when a party has had an opportunity to object to dischargeability and has failed to file a proper complaint within 60 days, the motion for leave to file such a complaint thereafter should not be granted. *See In re Benedict*, 90 F.3d 50, 54 (2d Cir. 1996); Fed. R. Bankr. P. 4007.

In this case, Kindy is unable to show that its effort to sue Ashley in the Second Amended Complaint was proper or that any of its claims have *prima facie* merit.

*Propriety of the Challenge to Discharge and Dischargeability*

In deciding whether to grant this motion to reopen, a preliminary issue is whether Kindy's objection to discharge and dischargeability was proper. Kindy asserts that the August 20, 2012 Second Amended Complaint against Ashley was appropriate because its existing

4

complaint against Marjorie "was duly amended to add [Ashley] as a defendant as [they] both purposefully and intentionally defrauded [Kindy] . . . [and] are both individually and together responsible for the debt." (Attorney Affirmation of Glenn R. Meyers in Support of Motion to Reopen Case, Docket Entry #14 at ¶ 11).  Kindy further maintains that, even if separate adversary proceedings had been filed, judicial economy would likely have led to the two matters being consolidated into one proceeding.

Whether or not the proceedings would have been consolidated, Kindy's position is untenable.  First, Kindy submits no authority for the proposition that a complaint against a debtor can be filed in another debtor's case, especially as there is no evidence that notice was provided to Ashley concerning the amendment of the complaint to add her as a defendant.  Ashley asserts that she was not served with a summons or complaint, and the record does not include an affidavit of any such service.  In any event, Kindy did not have a right to amend the complaint in Marjorie's case without seeking leave of court.  Bankruptcy Rule 7015, incorporating Federal Rule of Civil Procedure 15, provides that "[a] party may amend its pleading once as a matter of course."  Otherwise, the party must obtain the consent of the opposing party or leave of court.  Here, Kindy had already filed an earlier amended complaint and did not seek leave of Court to file the Second Amended Complaint.  Its Second Amended Complaint was unauthorized and remains unauthorized.

Beyond the issue of the Second Amended Complaint, the motion to reopen the case must be denied, in any event, based upon the total failure of Kindy to show that its underlying claim has any merit.

*Merits of Plaintiff's Objection to Discharge under § 523(a)(2)(A)*

Kindy alleges that Ashley's debt is nondischargeable based on Bankruptcy Code § 523(a)(2)(A).[2] To succeed on a cause of action under § 523(a)(2)(A), a creditor must show that: "money, property, services or an extension, renewal or refinancing of credit . . . [was] obtained" and that 1) the debtor made a false representation; 2) the debtor knew it was false; 3) the debtor possessed intent to deceive; 4) the creditor justifiably relied on the misrepresentation; and 5) the creditor sustained a loss that was proximately caused by the misrepresentation. *In re Hartley*, 479 B.R. 635, 641 (S.D.N.Y. 2012); *In re Vanarthos*, 440 B.R. 67, 73 (Bankr. S.D.N.Y. 2010); *In re Iulo,* 421 B.R. 49, 54 (Bankr. S.D.N.Y.2009). Fraud is not shown by the mere failure of performance, and "[a] string of broken promises and optimistic predictions . . . will not support a fraud claim." *In re Alicea,* 230 B.R. 492, 499, 501 (Bankr. S.D.N.Y. 1999).

Even if, as Kindy contends, Marjorie and Ashley entered into occupancy of the apartment with an intent not to pay rent, Kindy does not specify any representation made by Ashley at any time prior to or during the period in which she may have resided in the apartment. Ashley did not sign the lease or the guest agreement. Ashley did not execute any of the checks that were returned. Kindy urges that Ashley may have become aware that the checks were returned and that rent was not being paid and, therefore, that she benefitted from that situation by remaining in the apartment, and was unjustly enriched. However, none of those circumstances equates to any type of representation, much less a false representation.

The only purported representation by Ashley cited by Kindy is the August Stipulation that Marjorie signed with a handwritten notation under her signature indicating that she was

---

[2] Section 523(a)(2)(A) provides, in relevant part, that an individual is not entitled to a discharge for any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."

6

signing for Ashley and herself.  Kindy contends that that this constituted a representation by Ashley that she would perform the August Stipulation by making the required payments, and that as a result, Ashley obtained "money, property [or] services," within the meaning of § 523(a)(2)(A).  Leaving aside the issue whether a notation under Marjorie's signature was sufficient to bind Ashley, the alleged representation did not occur until three months after the apartment had been vacated, and Kindy does not indicate that services thereafter were induced as a result of Ashley's alleged signature on the stipulation.  "[U]nder the plain language of § 523(a)(2)(A), the services for which the Debtor is indebted and which were induced by Debtor's fraud cannot include those services which were performed prior to the misrepresentation."  *Fellows, Read & Assocs. v. Rieder*, 194 B.R. 734, 738 (S.D.N.Y. 1996).  Thus, Kindy has not shown that it sustained a loss that was proximately caused by the alleged misrepresentation.  Moreover, to the extent Kindy is seeking to recover for nonperformance of the August Stipulation, mere failure of performance does not amount to fraud.  *In re Alicea*, 230 B.R. at 501; *see also*, *Fellows*, 194 B.R. at 738 (concluding that failure to comply with a guarantee to pay a prior debt is not actionable under § 523(a)(2)(A) where the creditor did not show that the debtor received any additional services after the guarantee was signed).

*Objection to Discharge under § 727(a)*

In the alternative, Kindy argues that Ashley was not entitled to a discharge pursuant to § 727(a) of the Bankruptcy Code.  A "creditor may have his claim under §523(a) dismissed … but prevail on the objection to discharge under 727(a)."  *In re Hass*, 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002).

An order of discharge was issued on August 21, 2012 and, ordinarily, § 727(d) is the statutory basis for seeking to revoke a discharge. *In re Magundayao*, 313, B.R. 175, 177 (Bankr. S.D.N.Y. 2004). Section 727(d) provides, in relevant part, for the revocation of an order of discharge when "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." Thus, § 727(d) relief is not available to Kindy because, prior to the granting of Ashley's discharge, it knew of the alleged fraud.

There is authority for using Federal Rule of Civil Procedure 60(b) as the basis for relief, primarily limited to instances where a court seeks to correct its own errors. *Id*. at 177-78 (citing cases). However, even assuming that Kindy could use Rule 60(b) to seek relief under § 727(a), it has not demonstrated grounds on which it could prevail. Although in its present pleading Kindy does not even specify the subsection of § 727(a) on which it relies, it does cite § 727(a)(4)(A) in the Second Amended Complaint, and it argues that the filings of Ashley and her mother Marjorie were fraudulent and inconsistent. Section 727(a)(4)(A) provides that a debtor is granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

In order to prevail on a § 727(a)(4)(A) claim, a plaintiff must prove that "(1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with the intent to defraud creditors, and (5) the statement related materially to the bankruptcy case." *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005). A debtor's bankruptcy petition and schedules are considered statements under oath for purposes of § 727(a)(4)(A). *See NOF v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). Both omissions and affirmative misstatements constitute

8

false statements under §727(a)(4). *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008). However, to warrant a denial of discharge, any misrepresentation or omission must be material. *In re Radloff,* 418 B.R. 316, 322 (Bankr. D. Minn. 2009). Further, some showing must be made that the debtor acted "knowingly and fraudulently" in making the false statement or in omitting information. *See also*, *Klutchko*, 338 B.R. at 567 (holding that actual fraud must be shown and constructive fraud is insufficient).

In support of its argument that the two individual chapter 7 filings are fraudulent and inconsistent, Kindy lists multiple allegations of false statements and fraudulent conduct, but virtually all relate to Marjorie. For example, Kindy argues that Ashley listed her income at approximately $30,000, and it complains that Marjorie should have included Ashley's income in her filing because she listed two dependents. Kindy cannot, however, claim that Ashley is responsible for Marjorie's filing.

The one exception and only alleged false entry in Ashley's filing relates to the amount of income she listed in her chapter 7 means test. Kindy argues that Ashley should have included Marjorie's income in her means test and that such addition would have raised a presumption of abuse under § 707(b). However, Ashley vacated the apartment two years prior to her filing, and the means test looks back only six months. Kindy does not cite any basis for its assumption that Ashley was living with or receiving rent or money from her mother during the six months prior to Ashley's petition. Moreover, the rules with regard to voluntary support received by an adult unmarried debtor are very uncertain. In her means test, Ashley filed as an unmarried debtor with a household size of one. Although Official Form 22A, used for calculating the means test, requires certain married debtors to provide information concerning their spouse's income, unmarried debtors are only required to list their own income. As part of income, a debtor is

9

required to list "[a]ny amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents." Official Form 22A, line 8. This is not, however, a requirement to include all income earned by such other person but only the amount that the person provides the debtor on a regular basis for household expenses. (*See* 11 U.S.C. § 101(10A)(B) (providing that "current monthly income . . . includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ."). There is no guidance on whether an adult, wage-earning child who lives at home but does not contribute towards rent payments is deemed to receive income from the parent.

Nor is there any basis for the conclusion that Ashley had to include Marjorie as part of her household, even assuming that Marjorie and Ashley were living together and Marjorie was actually paying rent to some landlord. The term "household" is not defined in the Bankruptcy Code. *In re Morrison*, 443 B.R. 378, 384 (Bankr. M.D.N.C. 2011). Three approaches to determining the size of a household have developed:

(i) the "heads on beds" approach, which relies on the Census Bureau definition and includes all persons occupying a housing unit, both related and not related;
(ii) the "IRS dependency" approach, limiting household size to individuals a debtor can claim as a dependent on its tax return, and
(iii) the "economic unit" approach, which includes individuals living with the debtor and acting as an economic unit, in that either they are financially dependent on the debtor, they financially support a debtor, or their income or expenses are inter-mingled or interdependent with those of a debtor.

*Id*. at 384-86. While a determination of the proper size of a household and the appropriate imputation of rental payments would ordinarily require a factual analysis, there is no need for such analysis here. The only issue currently before the Court is whether Ashley "knowingly and fraudulently" made a false oath in her petition. While a debtor has an obligation to disclose

10

accurate, reliable information and a discharge is only intended for an honest debtor, denial of a discharge is an extreme penalty and § 727(a) is construed liberally in favor of a debtor. *Klutchko*, 338 B.R. at 567-68. In light of the liberal application of § 727(a) in favor of a debtor, and as there is no consensus on the proper determination of household size or on whether any portion of rental payments should, if made, be imputed to a debtor as "income," it is impossible to conclude that she was fraudulent in listing only herself in her household or in any other entries.

Kindy's only other argument that involves Ashley is its contention that Ashley and Marjorie planned a fraud, in that they schemed to file their respective cases sequentially, so that once Marjorie obtained a discharge, Ashley would seek her own. In support of its argument, Kindy notes that both individuals used the same attorney and that Ashley waited until a notice of "no distribution" was issued in Marjorie's case before filing her own case. Kindy, however, does not indicate how these sequential filings violated any section of the Bankruptcy Code or would justify denying her a discharge under § 727(a). By the time of the bankruptcy filings, the apartment had been vacated and the sequential filings were not used to hinder Kindy from regaining possession. Moreover, Kindy is inaccurate in its premise that either Marjorie or Ashley obtained a benefit from the "no distribution" notice filed in Marjorie's case. Although the chapter 7 trustee in Marjorie's case issued such a notice of "no distribution" before Ashley filed her petition, Kindy had commenced its adversary proceeding against Marjorie, and Marjorie has not even now received a discharge. Therefore, Ashley's filing had no effect on Kindy's rights, if any, in Marjorie's case.

CONCLUSION

For the reasons stated above, Kindy Properties' motion to reopen is denied.

IT IS SO ORDERED.

Dated: New York, New York
April 4, 2013

<u>**s/Allan L. Gropper**</u>
UNITED STATES BANKRUPTCY JUDGE